2013. 1478. We're ready when you are, Mr. Albert. Thank you, Your Honor. May it please the Court. The District Court put itself in the place of the jury and resolved two fact questions, each of which was disputed and material to its ruling on the design patent, and for that reason the ruling should be reversed so that a fact finder can resolve the case. The first error below is that the Court decided... The design patent is appearance. Yes, Your Honor. It's appearance. And it would seem it's at least as susceptible to summary judgment as other cases. And there are big differences that appear when one looks at these two designs. One is the fluted, flat-bottomed, with a front and back, and this is hemispherical, round-bottomed, and with a bowl-like. Why are these quite so different, and therefore very susceptible to summary judgment? Well, while certainly design patent cases can, in appropriate instances, be susceptible to summary judgment, there are two reasons why it wasn't appropriate here. One is that the Court didn't even consider the prior art, in the context of which these two, the design patent and the accused Roger's product, actually look far more similar to each other than they do to either of the points of reference that existed in the prior art. So you have a circular ring, you have a dependent ring-shaped plastic skirt, you have an exposed filter bag with a tapered shape. None of these existed in the prior art, and yet the District Court excluded those from consideration. Is the prior art limited to the K-Cups that you put in the brief, or is there more prior art? There are two references, the K-Cup, which we cited in our brief, and the Raymond reference, which Roger cited. And if you look at page 57 of our blue brief, you see the three-way lineup that we argue the District Court should have conducted, but didn't. And that is, on the left, you see the two prior art references. You've got the K-Cup, which is an enclosed plastic container. That's what people saw in the general public prior to this invention and prior to the Roger's cartridge. And then you also see the Raymond reference, which Roger cites. Both of those are vastly different in appearance from the Keurig design patent and from the accused Roger's cartridge. They don't have the same overall shape. They don't have the dependent skirt. They don't have the circular ring. They don't have the exposed filter, which was new in the art at the time that Keurig... I have some sympathy for your procedural, your process arguments. I guess it's more process and jurisprudential arguments. But I guess my concern is, don't we end up in the same place if it goes back? I mean, even if you say you have to look at it in light of the prior art, even if you say that you have to look at it as a whole, aren't there enough differences that you could still, that the trial courts could still say that no reasonable juror or fact finder could conclude otherwise? No, I don't think so, Your Honor, for a couple of reasons. First of all, the trial court excluded two categories of information. It excluded the, it focused primarily just on the shape of the filter. And that, in that sense, it's very similar to, this case is actually very similar to the revision military case, where the court remanded and required the district court to look at the shapes in the context of the prior art, even though there were some differences, because the court hadn't focused on the overall look and appearance. And secondly, there's the fact that the district court excluded, based on its finding, a factual finding, which it should not have made, that the tapered shape of the filter was functional. That was a separate error, which independently requires a remand. What happened there is actually kind of striking, because the district court resolved that factual issue based on, really, an insufficient record. What happened is that Rogers... The website page was inadmissible? We didn't have the opportunity, because that was waived by Rogers. Rogers argued, without any evidence, in their opening brief for summary judgment, that the tapered shape was functional. That's right. This came in reply, right? That's right. We then responded with extensive evidence, including the testimony of an MIT professor, an expert, a world-renowned expert on mechanical engineering, Alexander Slocum, who testified in great detail that this was an ornamental feature. He actually identified reasons, including the fact that there are alternative shapes, such as a flat-bottomed filter. He was absolutely right, because, as it turns out, and it's in the record, the shape of the cartridge that Keurig uses today is predominantly a flat-bottomed filter. So that works just as well and, in fact, better. But right or wrong, it was a fact issue. The court relied on a document that was introduced by Rogers only on a reply brief. What is that document? It was this Melitta document that they downloaded from a website of a competing coffee company, Melitta. They attached it to an attorney declaration and filed it. There was no expert testimony. There was no testimony of any kind about it. Keurig did not procedurally have the opportunity to even reply to it, even if it had. If you look at the Melitta document, and it's at A738, you actually see that it's not even talking. It's not even relevant, because it's not actually talking about the single-serve brewer system. You're talking about a world-renowned MIT expert. Is he world-renowned and expert in judging the appearance of coffee filters? No, but his testimony... We actually did have a different expert, Your Honor, Mr. Cressy, who did testify about the appearance. There's no expert about the appearance of a couple of things that we can plainly see. Precisely, Your Honor. Our focus with Dr. Slocum actually was on a different issue, which was the question of functionality, which the court improperly resolved, even though that's a fact issue. This court has held in PHG Technologies v. St. John, whether a patented design is functional or ornamental is a question of fact. Dr. Slocum wasn't testifying about the appearance. Mr. Cressy did that. Dr. Slocum was testifying that there are viable alternative designs that don't involve a tapered shape. In fact, as we see from the record, he's right, because the shape that Keurig uses today is not tapered. What would you say that the district court judge actually took away from the comparison analysis when, in fact, on page 17 of his decision, he did the side-by-side comparison and looked at the different filters? First of all, the judge took away consideration of the circular ring and the dependent ring shape of Keurig. Well, let's put that to the side. Let's say we disagree with you on that. I'm just talking about the filters. You're saying that the district court improperly found some aspect of your filter to be functional and then elected not to give any weight to that in the analysis of infringement. But then I saw him go through a fairly thorough analysis actually comparing the shape and appearance of your filter compared to the accused product's filter. And so it's not clear to me to what extent, if any, that his finding of functionality with respect to some concept behind your filter actually influenced his analysis at all. Well, because he says that he abstracted out the tapered shape of the filter, we can't know that for sure. In addition, because he focused on the filter, he failed to do what this court required in Egyptian Goddess and Revision Military and Crocs, which was to focus on the overall appearance. And the third error was that he failed to do it in the context of the prior art. And this is critical because this court has repeatedly held, starting with Egyptian Goddess, that art... Yeah, our opinion in Egyptian Goddess says you don't have to always consider the prior art. Only in close cases does it make sense to consider the prior art because then you have to look at the context of what an ordinary observer would understand in light of the prior art. And in cases where they are not similar at all, when they're sufficiently distinct, then in those instances, you don't need to consider the prior art. I thought that opinion was pretty clear on that. There was dictum in Egyptian Goddess that suggests that in an extreme situation, it may not be necessary to do an element-by-element comparison to the prior art. But even there, what the court held in Egyptian Goddess on bank was that the sole test, the sole test for determining whether a design patent has been infringed is the ordinary observer test. And it held that the ordinary observer is one who is presumed to be familiar with the prior art. So the starting point, even if you go into that extreme situation where they're so different that you can just decide without a point-by-point comparison, you still are doing it from the perspective of an ordinary observer familiar with the prior art. And the reason is that that gives you the frame of reference. When Egyptian Goddess departed from the point-of-novelty test, what it did to compensate for that, the fact that the point-of-novelty test was no longer going to be an element, was that it said, look, you have to look at it from the perspective of what the consumer would have seen in the prior art at the time. The consumer would have only had the K-cup and the Raymond reference, neither of which look remotely like the Keurig cartridge or the design, or the, sorry, the Keurig patent or the accused Rogers cartridge. So the exception that Your Honor is referring to, which is referenced in Egyptian Goddess, is one that comes up only in a situation where you have such an extreme difference between the two products that they couldn't possibly be confused. And with respect, I would suggest we don't have anything like that case here. The two products... Okay, so if we were to agree with the district court below that we do have that case here, then we affirm. Is that right? Oh, no, Your Honor, because even then the district court did two things that it should not have done, and we don't know how it would have come out. One is to not consider the prior art at all. So again, even in that exceptional situation under Egyptian Goddess... Do we still have to consider the prior art? I believe so, Your Honor, because the ordinary observer who is the person who has to make this judgment is defined in Egyptian Goddess as being someone familiar with the prior art. The prior art, as this court held, provides the context, the frame of reference. And it's only whether that person would see the two products as, sorry, the product and the design patent... Your argument is the prior art is always in the picture. It's always in the picture. It's just that in some instances the court can ultimately resolve the question without directly addressing the prior art. That's correct, Your Honor. And furthermore, the district court also made the error of considering the tapered shape as being functional, relying again on this inadmissible hearsay Melitta document, which we had no opportunity to rebut, and which in any event at most creates a dispute of fact. And then finally, the district court erred in exactly the way that this court reversed in the revision military case, which is to not consider the prior art at all and to look only at what it considered to be the most prominent feature, which it said was the filter. But again, if you look at the overall appearance of these two products, it's not the filter by itself that stands out. It's the fact that you never had an exposed filter, the dependent skirt shape, the ring, hanging from a circular lid. Was there anything in the prior art where they actually used a filter bag as opposed to a hard-sided cup? No. The closest thing they have to that is the Raymond reference, which looks nothing like either of these two products. It's a flat, pod-shaped thing. It has a slight curvature to it, but it's not even remotely light. And that's why the three-way comparison, which this court set up in Egyptian goddess, really is critical here. And the court did state that it looked at the – it said it had considered the appearance overall and on the whole. But in revision military, this court said it's not enough for the district court to say that. Where there, the district court had stated the correct overall design standard, but then had focused just on features that stand out as dissimilar, this court reversed that as error. And this case is really virtually on all fours with revision military in that sense and should be remanded for a determination by a fact finder, both of the fact question of design patent infringement and of the further related fact question as to whether any of the features are functional. And all of that in light of the legally required perspective of an ordinary observer who has to be familiar with the prior art. You're running down to the time you wanted to save, and we'll save it for you. Thank you, Your Honor. Mr. Peterson. Thank you, Your Honor. May it please the court. Let me start – there's two messages I'd like to leave you with here. The first is that the district court here employed an entirely correct analysis of this case and its decision. I think this would be a Rule 36 candidate based upon the decision the court issued. But even if you disagree with some of the court's analysis, for example, on the functionality of this tapering issue and the related valida factor, it doesn't make any difference to the ultimate conclusion in this case because even if you factor the prior art into looking at these plainly dissimilar designs, you would draw the same conclusion. And if anything, that prior art, in disregarding the tapering, considering it ornamental rather than functional, it doesn't change the fact that these two things look quite different. I think you're going to probably have to focus more on it doesn't matter because this is trial practice 101, that you can't put in evidence in reply and that the trial court can't rely on completely inadmissible evidence that was put in with an attorney affidavit in reply. So we've got to assume the valida website is out. All right. Let's take it out. I'll come back in a minute and gently try to suggest otherwise on the preservation point. But let's take it out. Yeah. All right. You can gently suggest. All right. I appreciate it. I have a limited time. I might as well focus it where it might be helpful. Yeah. Don't go down roads you can't win. So let me point out that. So what is it that the court found to be functional? The only characteristic that it found to be functional was this tapering characteristic. So what is tapering? Tapering simply means that something gradually reduces in size. All right. But tapering, if you are an ordinary observer who is looking at two products that have all sorts of different visual characteristics, I mean tapering in and of itself often does not cause two products to look alike. And here consider some of the other characteristics which impact what tapering tells you. Well, he didn't say that tapering made it not look alike or look alike. He said that tapering was functional and no reasonable juror could conclude otherwise. And he based it solely on the fact that Melitta filters are tapered. Right? Your Honor, but he said both of them are tapered. That's the point that they've made, that ours is tapered as well because even the hemispherical shape has a tapering characteristic. Well, let's assume he can't make that functional finding. That's right. As a matter of fact. All right. In summary judgment. All right. Then where are you? The products are still plainly dissimilar because even if you assume that tapering is an ornamental characteristic, the fact is that the nature of this tapering is dramatically different and you have to look at the overall product which takes you back to all the other differences which are evident. It starts with the skirt. The skirt has two noticeable differences in its visual appearance which are just plain. Our skirt is longer. Their expert, Mr. Cressy, conceded that. Second, their skirt has marks all the way around it. Ours doesn't have that. So visually the skirts would be different to an ordinary observer. You're now getting into things the district court never said. Your Honor, I think the district court did in fact point out that there was a difference in the length of the skirt. It's in the question. Yes, but you're talking about markings on the skirt. Well, that's true. All right. Fair enough. But I do think the point is there are differences in the skirt. The court acknowledged one. Their expert acknowledged that same one. Let me then go back to the filter. The filter, first, there is prior art to answer Judge O'Malley, your question. There is prior art of the use of a filter before. Here's the Riemann patent. It's filter paper. It doesn't hang down as far as ours does, but it does have that hemispheric characteristic, that half hemisphere that our design has. So your position, now Egyptian goddess said three or four times that the ordinary observer is one who is familiar with the prior art. And Egyptian goddess said specifically that in application, if an accused design has copied a particular feature of the claim design that departs conspicuously from the prior art, it will be easily noticed. So this three-part analysis that your friend on the other side is proposing is one that is consistent with Egyptian goddess and certainly consistent with revision military. So the question is, back to your second prompt, you're saying it wouldn't matter even if all the prior art was available. I'm saying the two are still plainly dissimilar. And it comes within the language of Egyptian goddess, which starts out by telling us, in some instances, the claim design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear substantially the same to the ordinary consumer as required by Gorham. The threshold inquiry. So you have to convince us that no reasonable juror could ever find in Keurig's favor with a proper analysis. Because looking at them, the judge can determine, based upon their plain appearance, that they are so dissimilar that a juror could not draw that conclusion looking at the totality. But why should we, as a court of appeals, make that determination? If we think that the trial court erred in considering evidence, erred in making certain fact findings, and erred in the way it set out the legal framework, shouldn't we send it back? Even if the trial court reaches the same conclusion, shouldn't we require them, the trial judges, to use the correct analysis? He used the correct analysis. He used the Egyptian goddess formulation, which starts with a threshold question. There are two lower court cases that read Egyptian goddess that way. What if we don't read Egyptian goddess that way? Revision military doesn't seem to read Egyptian goddess that way. Revision military is quite a different case. Revision military is a preliminary injunction case, where the district judge applied the wrong standard for granting a preliminary injunction. And where the court said that it failed to look at the totality in its description of the case. The whole point of Egyptian goddess is to say we have one test. One test only. It's the ordinary observer test, the ordinary observer who's familiar with the prior art. And now we've got a couple district courts who say, oh yeah, that two-part test that Egyptian goddess did away with, we're now going to just call it a different two-part test. No, I think Egyptian goddess leaves room for the threshold determination by the court, that there's plain dissimilarity. And I think you shouldn't disturb that part, which I think is a fair reading of the case, for a couple of reasons. The first is, this is a case, remember, where there's really only one and arguably two pieces of prior art. My friend talked about the key cup, but in their reply brief, in their supplemental brief in the district court, they disclaimed that as being even very important to this inquiry. So it really comes down to one piece of prior art, the Riemann prior art. And remember that the concern the in-bank court had in Egyptian goddess was that the point of novelty test didn't work very well when you had a lot of prior art as opposed to very little of it. So I don't think you can say that the failure to take a look at that other prior art in this particular case is a problem, nor should you have a rule. Remember, this carve-out, this patent dissimilarity element of Egyptian goddess is just based upon a failure of proof, which is you come forward and you say, here are two things, and it's obvious to the judge that they're different. And then let's talk about the prior art. Let's assume the prior art should have been considered. What does the prior art do if you just look at what it shows? The prior art makes the case even stronger for the plain dissimilarity conclusion if you factor it in. You have a round top, a round lid on both the Riemann prior art and on the key cup prior art. You've got tapering on the Riemann prior art. You've got that half hemispherical shape. So in other words, if you put the prior art into the equation, I don't think you come to any different conclusion in this case at all. And again, I do think the court applied the right standard, but I don't think it ultimately makes an outcome difference if you decide you made a mistake about that. And with respect to tapering, again, tapering is not a condition which has a dramatic overall impact on the look of this. So if you take tapering and you characterize it as ornamental, the fact of the matter is that the filter on the Rogers product is longer. It's, I'm sorry, shorter. It's wider. It has a totally different shape. And that those characteristics are obvious even though both of them, both that is the patent, the patent claim, and also the design of the Rogers product, they both have a tapering characteristic. So again, if you think there was error with respect to factoring tapering out of the equation of the analysis, it really, I think it's about the least important characteristic for purposes of making an overall assessment of how the product looks. So let me just take a look and see then if there's some, I've addressed the point about what the relevant prior art was, Your Honor's question. There was a statement that my friend made about the district court not taking into analysis the circular ring or the skirt. I think, in fact, the judge did address those subjects in his decision. He discarded the possibility that those things were functional. So they were factored into the analysis that the court did. He did mention that they weren't functional, but did he mention them in his overall assessment of the design? Yes, I think he effectively did, Your Honor. I mean, he acknowledged the similarity, I believe, of the circular tops, which would put them on the side of the... But when he did his actual ordinary observer comparison, he only looked at the filter bag. He talked about the, he also talked about, as I remember, Your Honor, he talked about the skirt. He acknowledged the length difference. He did acknowledge the fact that the circular tops were the same. What he did, of course, was he then zeroed in on what it was, which he thought were the most important overall characteristics that one would take into account in assessing the case. And there, of course, the filter is the largest and most visually apparent piece of this analysis, the thing that the ordinary observer would most be drawn to. I mean, take, for example, the circular top. The circular top doesn't mean you end up with a circular object. So, in other words, okay, so there's an element of circularity acknowledged, but, you know, just as you look at... This court has cases that tell us, obviously, that you look at the overall appearance of the product, but this court also has cases that tell us that you don't take one characteristic, which is common, and blow it out of proportion. Here, the circular top, I think, falls into that category of similarity. And I think, again, if you want to take the prior art and you want to add it into the equation, there's no fact question about what the prior art looks like. Both of the so-called prior art pieces have a circular top. So if you put that into the equation, then those things go away entirely as being any kind of an element that has any relevance on my friend's side of the case. So, in other words... And then, returning just briefly to the Melitta matter, I'm not going to make much of a point here, but I just do want to point out, you know, this was a piece of evidence. There was an oral argument in this case on this issue where this subject was never mentioned. They had an opportunity to file a supplemental brief directed to the K-Cup. The court had a question about it, its role in prior art. That's at docket 125. The parties didn't cite it in their brief, so it's not in the joint appendix. You'll see on page 6, there's a heading where, as they say, they disclaim its general relevance to the issue of prior art. But nevertheless, they had ample opportunity to raise the subject if they wanted to bring it up. So I think at this point, unless the court has questions for me, I'd be prepared to submit the case. Thank you. Mr. Peterson, Mr. Albert has approximately two minutes of rebuttal time, two and a half minutes. Thank you, Your Honor. Mr. Peterson mentioned the Riemann prior art, and that's a perfect example of why this case really needs to be resolved by a fact finder. Riemann is actually strikingly different. It doesn't have a dependent skirt at all. It doesn't have the same sort of tapered filter bag with about a one-to-one ratio of height to width. It looks really nothing like either the design patent or the accused product. Did you tell the district court that the K-Cup wasn't that important? I don't recall saying that, Your Honor. I'm not sure what Mr. Peterson is referring to there that doesn't ring a bell. The marks that he referred to on the skirt, those are marks of curvature. Those aren't special markings. Now we're down into fact issues, of course. These should be resolved by a fact finder, but we disagree with that suggestion. These products, and they also repeatedly refer to their product as hemispherical, and I just want to take a moment to challenge that. It's actually not a hemisphere. It actually has an upper portion of the filter that comes down very much like the Keurig one, and then the only real difference is that there's a little bit more curvature at the bottom than in the Keurig design. Now this is really very similar to the Crocs case, where there was a difference in the Crocs case. There were circular holes versus holes that were more angular, but the court said, as a matter of law, that's not sufficient to distinguish them. That is, at the very least, a fact question. In that case, the court actually held that they were confusingly similar, again, by looking at the overall appearance. And on the functional issue, I just mentioned that Rogers actually admitted at page 35 of its brief that the decision below was based, that's their word, based, on the functionality ruling. So if that ruling can't stand, which we argue that it can't as a matter of law, then they've essentially acknowledged that it at least has to go back on a remand to the lower court. Finally, Your Honor, I think really there's a risk here of letting the exception that's referred to in Egyptian Goddess swallow the rule. It should not be a matter where district courts are simply stepping into the shoes of jurors and deciding these questions. There had never been in the prior art anything that looked even remotely like what Keurig patented here. Rogers came out with something quite similar to that. Are there differences? There are some. But it's at the very least in the gray zone where it's a question of fact for the jury, particularly considering that this court established on bank that the sole test is that of the ordinary observer who must be informed by a knowledge of the prior art.  I have nothing further. Thank you. Thank you, Your Honor.